**DRILEX SYSTEMS, INC., Masx Energy Services Group, Inc., and Masco Industries, Inc., Petitioners,**

v.

**Jorge FLORES and Maria Flores, individually and as parents of Gina Marie Flores, Jose Luis Flores, and Georgette Nicole Flores, minors, Respondents.**

No. 98–0322.

Supreme Court of Texas.

Argued Nov. 19, 1998.

Decided Aug. 26, 1999.

Dissenting Opinion July 1, 1999.

---

Justice ABBOTT delivered the opinion of the Court, in which Justice ENOCH, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES join.

We grant the Flores family's motion for rehearing. We withdraw our opinion dated July 1, 1999, and substitute the following in its place.

This case concerns the exclusion of an expert witness's testimony for violating "the Rule"[1] by discussing the case with a corporate representative. In addition, we clarify the proper procedure for applying settlement credits under Chapter 33 of the Civil Practice and Remedies Code when all of the plaintiffs are seeking damages for injury to the same person. Based on our resolution of these issues, we affirm the court of appeals' judgment, as reformed, and remand this cause to the trial court to render judgment in accordance with this opinion.

**I**

Jorge Flores was employed as a roughneck/floorhand for Helmerick and Payne, a drilling contractor. Jorge's hand was severely injured during a well-drilling operation for Amoco Production Company. Jorge, his wife Maria, and their three children Gina, Jose, and Georgette, sued Amoco, Drilex Systems, Inc., MASX Energy Services Group, and MASCO Industries, Inc. for Jorge's injury.

Before trial, Amoco settled with all of the plaintiffs for a total of $774,675. The case proceeded to trial against Drilex, MASX, and MASCO ("Drilex"). On the first day of trial, Drilex invoked the Rule and asked that any witnesses present in the courtroom be sworn. The trial court swore in Jorge and Maria Flores and Tom Bailey, Drilex's corporate representative. The court noted that these individuals were parties, and instructed that "anybody else" who stayed in the courtroom for a considerable time would not be allowed to testify. Although Texas Rule of Civil Procedure 267(d) requires the trial court to instruct witnesses placed under the Rule "that they are not to converse with each other or with any other person about the case other than the attorneys" and that "they are not to read any report of or comment upon the testimony in the case," TEX.R. CIV. P. 267(d), the trial court did not give such an admonishment at that time. Drilex did not attempt to have the trial court exempt its expert witnesses from the Rule.

Plaintiffs then called their first witness, Tom Bailey. During Bailey's testimony, one of Drilex's testifying expert witnesses, Randy Acock, remained present. On the second day of trial, counsel for the Flores family moved to strike Acock as a witness, arguing that Acock had violated the Rule by being present during part of Bailey's testimony. Drilex's counsel argued that

---

**1.** *See* TEX.R. CIV. P. 267(a) (defining "placing witnesses under the rule" as the process of swearing in the witnesses and removing them from the courtroom to some place where they cannot hear the testimony of any other witness); *see also* TEX.R. EVID. 614.

Acock was exempt from the Rule because he was an expert. The trial court made no ruling at the time, and Acock left the courtroom.

When Drilex later called Acock to testify, counsel for the Flores family again objected to Acock's testimony on the basis that Acock was present for a portion of Bailey's testimony. After listening to counsel's arguments and discussing the substance of Acock's testimony, the court stated that it would allow Acock to testify. However, the court was then informed that Acock had also discussed the case with Bailey after Bailey had testified. Acock also admitted talking to another expert after hearing Bailey's testimony, but stated that they did not discuss Bailey's testimony. Based on this additional information, the trial court excluded Acock's testimony.

At the conclusion of the trial, the jury returned a verdict finding that Drilex was sixty percent responsible, Amoco was thirty percent responsible, and Jorge Flores was ten percent responsible for causing Jorge's injuries, and awarded a total of $2,145,000 in damages. After applying a credit for the Flores family's settlement with Amoco, the trial court awarded Jorge $1,929,048, and ordered that all other plaintiffs take nothing.

Drilex appealed, arguing, among other things, that the trial court improperly excluded Acock's testimony and failed to properly apply the settlement credit. The Fourth Court of Appeals affirmed the trial court's exclusion of Acock's testimony, but reformed the judgment after reallocating the settlement credit. Drilex petitioned for review in this Court. The Flores family filed a conditional petition for review solely on the settlement credit allocation issue.

## II

Drilex argues that the trial court abused its discretion by excluding Acock's testimo-

ny for violating the Rule, and that this error was harmful because Acock's testimony was necessary to the presentation of its defense. We agree with the court of appeals that the trial court did not abuse its discretion, and in any event, the excluded testimony would have been cumulative.

### A

Sequestration minimizes witnesses' tailoring their testimony in response to that of other witnesses and prevents collusion among witnesses testifying for the same side. *See Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 130 (Tex.App.—Texarkana 1994, writ denied); *Gordon v. State*, 796 S.W.2d 319, 323 (Tex.App.—Austin 1990, pet. ref'd); 1 GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 614.1, at 656–57 (2d ed.1993). The expediency of sequestration as a mechanism for preventing and detecting fabrication has been recognized for centuries. *See* 6 WIGMORE, EVIDENCE § 1837, at 455–56 (Chadbourn rev., 1976). English courts incorporated sequestration long ago, and the practice came to the United States as part of our inheritance of the common law. *Id.* at 456; *see also Geders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). Today, most jurisdictions have expressly provided for witness sequestration by statute or rule. *See* 6 WIGMORE, *supra* § 1837, at 458.

In Texas, sequestration in civil litigation is governed by Texas Rule of Evidence 614 and Texas Rule of Civil Procedure 267. These rules provide that, at the request of any party,[2] the witnesses on both sides shall be removed from the courtroom to some place where they cannot hear the testimony delivered by any other witness in the cause. TEX.R. CIV. P. 267(a); TEX.R. EVID. 614. Certain classes of prospective witnesses, however, are exempt from exclusion from the courtroom, including: (1) a party who is a natural person or his or her spouse; (2) an officer or employee of a

---

**2.** The court may also sequester the witnesses on its own motion. TEX.R. EVID. 614.

party that is not a natural person and who is designated as its representative by its attorney; or (3) a person whose presence is shown by a party to be essential to the presentation of the cause. TEX.R. CIV. P. 267(b); TEX.R. EVID. 614.

■ When the Rule is invoked, all parties should request the court to exempt any prospective witnesses whose presence is essential to the presentation of the cause. The burden rests with the party seeking to exempt an expert witness from the Rule's exclusion requirement to establish that the witness's presence is essential. *See Burrhus v. M & S Supply, Inc.,* 933 S.W.2d 635, 643 n. 7 (Tex.App.—San Antonio 1996, writ denied); *Kelley v. State,* 817 S.W.2d 168, 172 (Tex.App.—Austin 1991, pet. ref'd); *Texas Employers' Ins. Ass'n v. Cervantes,* 584 S.W.2d 376, 381 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.). Witnesses found to be exempt by the trial court are not "placed under the Rule."

■ Once the Rule is invoked, all nonexempt witnesses must be placed under the Rule and excluded from the courtroom. Before being excluded, these witnesses must be sworn and admonished "that they are not to converse with each other or with any other person about the case other than the attorneys in the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under the rule." TEX.R. CIV. P.

267(a), (d). Thus, witnesses under the Rule generally may not discuss the case with anyone other than the attorneys in the case.

■ Witnesses exempt from exclusion under Rule 614 (and Rule 267) need not be sworn or admonished. Texas Rule of Civil Procedure 267(d) states that "[w]itnesses, *when placed under Rule 614 of the Texas Rules of Civil Evidence,* shall be instructed by the court that they are not to converse with each other or with any other person about the case other than the attorneys." TEX.R. CIV. P. 267(d) (emphasis added). The instruction requirement does not apply to exempt witnesses because they are not "placed under Rule 614."

■ A violation of the Rule occurs when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in the case or by reading reports or comments about the testimony. When the Rule is violated, the trial court may, taking into consideration all of the circumstances,[3] allow the testimony of the potential witness, exclude the testimony, or hold the violator in contempt. *See* TEX.R. CIV. P. 267(e); *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.,* 509 S.W.2d 678, 684 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). We review the trial court's

---

3. *See Southwestern Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965) ("The trial judge [has] the discretionary authority to take into consideration all of the facts...."); *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.,* 509 S.W.2d 678, 684 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.) ("Taking into consideration all of the circumstances, the trial judge may bar the witness from the stand ... [or] permit the witness to testify...."). These circumstances include, but are not limited to, whether the party calling the witness was at fault in causing or permitting the violation, whether the witness's testimony is cumulative, and whether the witness is a fact witness. *See, e.g., Johnson,* 389 S.W.2d at 648 ("The plaintiff invoked the rule and

should have seen that Blakey was placed under rule."); *Upton v. State,* 894 S.W.2d 426, 428 (Tex.App.—Amarillo 1995, pet. ref'd) ("[I]n determining whether abuse occurred, the reviewing court must consider the witness, the nature of his testimony, and its relationship to the case in chief."); *Garza v. Cole,* 753 S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (noting that witness was not a fact witness and his testimony was cumulative); *Holstein v. Grier,* 262 S.W.2d 954, 955 (Tex.Civ.App.—San Antonio 1953, no writ) (considering whether witness willfully violated the Rule and whether the Rule was violated with the "consent, connivance, procurement or knowledge" of the party or attorney who called the witness).

action for abuse of discretion. *See Southwestern Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 647–48 (Tex.1965); *Southwestern Pub. Serv. Co. v. Vanderburg,* 581 S.W.2d 239, 247 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

## B

Drilex asserts that there was no Rule violation because Acock was exempt from the Rule, he spoke only to another exempt witness, and neither witness was admonished not to discuss the case with others. Thus, contends Drilex, the trial court abused its discretion by excluding Acock's testimony.

■ Drilex contends that the trial court "exempted" Acock from the Rule's requirement that witnesses be excluded when it ruled that Acock could testify despite the fact that he had remained in the courtroom during Bailey's testimony. Because witnesses exempt from exclusion are also exempt from Rule 267(d)'s admonishment not to discuss the case with others, Drilex argues that the trial court abused its discretion when it exempted Acock from the exclusion requirement but nevertheless excluded his testimony for discussing the case with Tom Bailey. The flaw in this argument is that Drilex never established—and the trial court never found—that Acock was in fact exempt. After being told that Acock had been present during Bailey's testimony, the trial court concluded that he would allow Acock to testify. As noted, a court may, subject to review for abuse of discretion, allow a witness to testify even though the witness has violated the Rule by remaining in the courtroom during another witness's testimony. *See, e.g., Garza v. Cole,* 753

S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding that the trial court did not abuse its discretion in allowing a video technician to testify despite his violating the Rule because he was not a fact witness and his testimony was cumulative). But a decision to allow a witness to testify despite his presence in the courtroom is not the same as a finding that the witness is exempt from the Rule. Thus, although Drilex is correct that a witness who is exempt from exclusion is also exempt from Rule 267(d)'s requirement not to discuss the case with others, the trial court did not actually exempt Acock from the exclusion requirement.

■ Drilex also argues that all expert witnesses are exempt from the Rule under the essential presence exception in Rules 614 and 267, and therefore Acock was exempt. *See* Tex.R. Evid. 614; Tex.R. Civ. P. 267(b) (both exempting from exclusion persons whose presence is shown to be essential to the presentation of the cause). Drilex is correct that this exception is often relied on to allow expert witnesses to be exempt from the Rule. *See Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 52 (Tex.App.—Dallas 1989, writ dism'd); *Triton Oil,* 509 S.W.2d at 685. But nothing in Rules 614 or 267 suggests that *all* expert witnesses qualify for exemption. *See Morvant v. Construction Aggregates Corp.,* 570 F.2d 626, 630 (6th Cir.) ("[H]ad the framers intended [an automatic exemption for experts], they would have said so, or added a fourth exception."), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978). Although an expert witness may *typically* be found exempt under the essential presence exception,[4] experts are not *automatically* exempt.[5] Instead, Rules 614 and 267

---

4. The Notes of the Advisory Committee to the Proposed Federal Rule, upon which the Texas rule is based, suggest that the essential presence exception contemplates an expert needed to advise counsel in the management of litigation. Fed.R.Evid. 615 advisory committee's note. In addition, courts have held that expert witnesses expected to testify in an expert capacity only, and not to the facts of the

case, should typically be exempt so that they can form opinions based on more accurate factual assumptions. *See, e.g., Opus 3 Ltd. v. Heritage Park, Inc.,* 91 F.3d 625, 629 (4th Cir.1996); *see also* Tex.R. Evid. 703. However, expert witnesses who are also fact witnesses provide a closer case.

5. Interpreting the almost identical federal witness exclusion rule, Federal Rule of Evi-

vest in trial judges broad discretion to determine whether a witness is essential. *See Opus 3 Ltd. v. Heritage Park, Inc.,* 91 F.3d 625, 629 (4th Cir.1996); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.,* 993 F.2d 1201, 1209 (5th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). *But see Morvant,* 570 F.2d at 630 ("[W]here a fair showing has been made that the [presence of the] expert witness is in fact required for the management of the case, and this is made clear to the trial court, we believe that the trial court is bound to accept any reasonable, substantiated representation to this effect by counsel.").

 Drilex presented no evidence to the trial court to establish that Acock should have been exempt, other than its argument that experts are *per se* exempt. Drilex could have presented evidence that Acock needed to be present to form his opinions based on more accurate factual assumptions, *see* TEX.R. EVID. 703, but it did not do so.[6] Moreover, Acock admitted in the bill of exceptions that he did not need to be present in the courtroom. Thus, the trial court did not abuse its discretion by failing to exempt Acock from the Rule.

 Drilex further contends that Rule 614 "did not apply to Tom Bailey and it could not serve as a predicate for pre-venting him from discussing the case with Mr. Acock." Tom Bailey, Drilex's designated corporate representative, was exempt from exclusion, and the trial court recognized that Bailey was exempt. *See* TEX.R. CIV. P. 267(b)(2) (exempting "an officer or employee of a party that is not a natural person and who is designated as its representative by its attorney"); *Fazzino v. Guido,* 836 S.W.2d 271, 277 (Tex. App.—Houston [1st Dist.] 1992, writ denied). But the record indicates that the trial court based its decision to disqualify Acock partly on its belief that Bailey violated the Rule. The trial court stated that, although Bailey was exempt from the Rule for the purpose of exclusion from the courtroom, he was under the Rule for the purpose of discussing the case with other witnesses, and thus he violated the Rule by discussing the case with Acock. As stated previously, a witness such as Bailey who is exempt from exclusion is also exempt from the Rule for purposes of discussing the case with others. Bailey was not under the Rule for any purpose—only Acock was. Accordingly, this basis for the trial court's decision to exclude Acock was erroneous. We will nevertheless uphold the trial court's ruling if there is any legitimate basis for it in the record. *See Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998) ("An appellate

dence 615, a number of circuit courts of appeals have declined to adopt the *per se* rule urged by Drilex. *See Opus 3,* 91 F.3d at 629 ("[W]e decline to adopt a *per se* rule exempting expert witnesses, even those who are expected only to render opinions, from sequestration."); *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1374 (5th Cir.1981) ("Whether or not it would be reasonable for a trial court to exempt an expert witness from a sequestration order, there is no required exemption implied under rule 615."); *Morvant,* 570 F.2d at 630 ("That an expert may be assisted by being present in the courtroom to hear the testimony upon which he is expected to base his expert opinion, as set forth in Rule 703, does not in our judgment furnish an automatic basis for exempting him from sequestration....").

**6.** Drilex argued that "an expert is the exception to the rule and an expert may always, may always attend and hear the testimony" and that "[a]ll experts get to discuss the case." Drilex informed the court that Acock was "going to offer opinions regarding the fitness of this piece of oil field equipment." However, Drilex did not establish that Acock would do so based on other witnesses' testimony. Instead, Drilex stated that Acock would offer these opinions "based on his experience and practice in the oil field." Drilex also made the argument that "there is no way that the Defendant can adequately present it's [sic] case without the presence of this expert here today to testify." Whether the witness's testimony is essential to the case is a different matter than whether the witness's presence in the courtroom is essential to the presentation of the case.

court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling.").

The trial court also stated that it would not allow Acock to testify because he discussed the case with another witness although he was under the Rule. The proper focus in determining whether Acock's testimony should have been excluded is whether Acock, not Bailey, was exempt from Rule 614. If Acock was not exempt, he was not free to discuss the case with Bailey, regardless of whether Bailey was exempt from the Rule. Because Acock was never exempted from Rule 614, he was not free to discuss the case with another witness, and his doing so violated the Rule. Accordingly, we conclude that the trial court's decision was not an abuse of discretion.

■■■ We acknowledge that the court never expressly placed Acock under the Rule and never instructed him not to discuss the case with others. However, a court may, in its discretion, exclude the testimony of a prospective witness who technically violates the Rule even though the witness was never actually placed under the Rule. *See Johnson*, 389 S.W.2d at 647 ("[W]e disagree with the plaintiff's position that under no circumstances may the Court, in its discretion, refuse to allow testimony where the rule has been invoked and where the proffered witness has either violated the rule, or ... has not been placed under the rule."); *Southwestern Pub. Serv. Co. v. Vanderburg*, 581 S.W.2d 239, 246–47 & n. 5 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) (holding that the trial court did not abuse its discretion by excluding the testimony of a prospective witness who discussed the case with another witness, even though the disqualified witness was not present in the courtroom when the Rule was invoked and was never placed under the Rule); 3 McDONALD, TEXAS CIVIL PRACTICE § 19:40[b], at 566–67 (George ed., 1992) (trial court may exclude witness who violated the Rule although he was not placed under it).

■■■ Drilex invoked the Rule and was obligated to ensure that its witnesses either complied with the Rule or were exempted from it. *See Johnson*, 389 S.W.2d at 648; *see also* 6 WIGMORE, *supra* § 1842, at 477 ("[T]he burden of causing every witness to be notified, and thus of preventing inadvertent violation, may fairly be placed upon the party demanding sequestration."). Drilex did neither. Thus, the trial court acted within its discretion in disqualifying Acock even though the court never actually placed Acock under the Rule and failed to appropriately instruct him.

Additionally, we note that it may be an abuse of discretion in some circumstances to disqualify a witness even when the witness has violated the Rule. However, Drilex has not argued that excluding Acock's testimony was an abuse of discretion even if Acock was not exempt from the Rule, and therefore we do not decide that question.

Last, we agree with the court of appeals that the excluded testimony was largely cumulative, and thus Drilex was not harmed by Acock's disqualification. *See Southwestern Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 474 (Tex. 1998).

### III

■■■ Drilex also complains that the court of appeals failed to properly credit the Amoco settlement. The agreed judgment between the Flores family and Amoco specified the settlement amounts distributed to each of the family members:

| | |
|---|---|
| Jorge & Maria | $425,000 |
| Jorge individually | $266,730 |
| Gina Flores | $ 29,374 |
| Jose Flores | $ 27,286 |
| Georgette Flores | $ 26,285 |
| | $774,675 |

The jury awarded the Flores family $2,145,000 in damages, allocated as follows:

| Jorge | $2,000,000 |
| Maria | $ 100,000 |
| Gina | $ 15,000 |
| Jose | $ 15,000 |
| Georgette | $ 15,000 |
| | $2,145,000 |

In determining how to allocate the settlement money as a credit against the family members, the court of appeals noted that the agreed settlement with Amoco distributed the money in individual payments to individual claimants (Jorge, Gina, Jose, and Georgette) in addition to the lump sum of $425,000 awarded to multiple claimants (Jorge and Maria). 961 S.W.2d at 215. The court then applied two different methods of allocation, one for the individual payments, and one for the lump-sum payment.

For the lump-sum payment, the court of appeals used a percent-allocation method. Specifically, the court determined that Jorge's percent of the total jury award to Jorge and Maria was about ninety-five percent ($2,000,000/$2,100,000), and Maria's about five percent ($100,000/$2,100,000). The court of appeals allocated ninety-five percent of the $425,000 ($404,762) as a credit against Jorge's recovery, and five percent of the $425,000 ($20,238) as a credit against Maria's recovery.

Then, to allocate the credits for the individual settlement payments, the court of appeals credited each individual plaintiff's settlement payment against each individual plaintiff's jury award. Because the children had already received more in settlement money than they were awarded by the jury, the court rendered judgment that the children take nothing. After also deducting ten percent for Jorge's contributo-

ry negligence from Jorge's and Maria's recovery, the court of appeals awarded $1,128,508.10 to Jorge and $69,761.91 to Maria.

Justice Rickhoff dissented, arguing that the entire family should have been treated as one claimant rather than as individual claimants, and therefore the total of the settlement money paid to the Flores family should have been deducted from the total amount awarded to the family by the jury. After making the deduction, Justice Rickhoff would have allocated the remaining damages among the plaintiffs based on their respective percentages of the total jury verdict. 961 S.W.2d at 216 (Rickhoff, J., dissenting).

Drilex argues that the court of appeals majority erred because it did not deduct the full $774,675 paid by Amoco from the Flores family's recovery and therefore did not deduct "the sum of the dollar amounts of all settlements" as mandated by section 33.012(b)(1) of the Civil Practice and Remedies Code.[7] Drilex further contends that the court of appeals erred by treating the family members as separate claimants for purposes of deducting the settlement credit, and urges that the dissent below reached the correct result. We agree.

Application of the settlement credit in this case is governed by Chapter 33 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE § 33.002(a); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 926 (Tex.1998). Section 33.012 requires the trial court to reduce the judgment according to one of two methods—a dollar-for-dollar credit or a sliding scale[8]—elected by the defendant. TEX. CIV.

7. The Amoco settlement totaled $774,675; however, the court of appeals' allocation method resulted in a deduction of only $736,730 from the Flores family's recovery.

8. The sliding scale directs the trial court to reduce the amount of damages to be recovered by the claimant by a credit equal to: a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:

(A) 5 percent of those damages up to $200,000;
(B) 10 percent of those damages from $200,001 to 400,000;
(C) 15 percent of those damages from $400,001 to 500,000; and
(D) 20 percent of those damages greater than $500,000.
TEX. CIV. PRAC. & REM.CODE § 33.012(b)(2).

PRAC. & REM.CODE §§ 33.012, 33.014. Drilex elected the dollar-for-dollar credit in section 33.012(b)(1), which provides:

> If the *claimant* has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the *claimant* with respect to a cause of action by a credit equal to . . .
>
> (1) the sum of the dollar amounts of all settlements. . . .

TEX. CIV. PRAC. & REM.CODE § 33.012(b) (emphasis added).

> Section 33.011(1) defines "claimant" as
>
> a party seeking recovery of damages pursuant to the provisions of Section 33.001. . . . In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, *'claimant' includes both that other person and the party seeking recovery of damages* pursuant to the provisions of Section 33.001.

TEX. CIV. PRAC. & REM.CODE § 33.011(1) (emphasis added).

All of the Flores family members are seeking recovery of damages for injury to Jorge. Thus, under the plain language of section 33.011(1), the term "claimant" in section 33.012(b)(1) includes all of the family members. *See J.D. Abrams, Inc. v. McIver,* 966 S.W.2d 87, 96 (Tex.App.— Houston [1st Dist.] 1998, pet. denied); *see also General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex.1993) (construing the almost identical definition of "claimant" in Texas Civil Practice and Remedies Code section 41.001 and concluding that "when a party is seeking exemplary damages for the death of an individual, both the deceased and the persons seeking recovery are defined as a claimant").

If the Legislature had intended that each of the parties seeking recovery for damages for the same person be treated as individual claimants, it could easily have written the statute as follows: "In an action in which a party seeks recovery of damages for injury to another person . . . *both that other person and the party seeking recovery of damages are claimants.*" Instead, the Legislature provided that " 'claimant' includes both that other person and the party seeking recovery of damages." TEX. CIV. PRAC. & REM.CODE § 33.011(1). We are bound to apply the Legislature's chosen definition. *See Tijerina v. City of Tyler,* 846 S.W.2d 825, 827 (Tex.1992). Thus, the court of appeals erred in treating each of the Flores family members as individual claimants rather than as one claimant.

Because we must view the entire Flores family as one claimant for section 33.012(b)(1) purposes, the total of all damages to be recovered by the family must be reduced by the total of all settlements received by the family. *See* TEX. CIV. PRAC. & REM.CODE § 33.012(b)(1) (requiring that the sum of the dollar amounts of all settlements entered into by a claimant be deducted from the amount of damages to be recovered by that claimant). Accordingly, the $2,145,000 to be recovered by the family must be reduced by $774,675, the sum of the dollar amounts of all settlements received by the family. *See C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 321 (Tex.1994); *McIver,* 966 S.W.2d at 96.[9] Then, to give effect to the jury verdict, the remaining damages should be allocated among the parties seeking recovery based on each party's percentage of the total verdict awarded to the claimant by the jury. *See* 961 S.W.2d at 216 (Rickhoff, J., dissenting); *see also Gem Homes, Inc. v.*

---

**9.** Before applying the settlement credit, the total of the family's recovery must be reduced by a percentage equal to Jorge's percentage of responsibility (*i.e.,* contributory negligence). *See* TEX. CIV. PRAC. & REM.CODE § 33.012(a) ("If the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility.").

*Contreras,* 861 S.W.2d 449, 460 (Tex. App.—El Paso 1993, writ denied).

Applying these principles, the Flores family's damages are calculated as follows:

| | |
|---|---|
| TOTAL JURY AWARD TO FAMILY CLAIMANT: | $2,145,000 |
| LESS 10% CONTRIBUTORY NEGLIGENCE: | $ 214,500 |
| LESS TOTAL SETTLEMENT FROM AMOCO: | $ 774,675 |
| TOTAL AWARD (BEFORE ALLOCATION) | $1,155,825 |

The remaining amount is then allocated among the family members according to their respective percentages of the total jury award, as follows:

| | (A)<br>Jury Award | (B)<br>% of Total Jury<br>Award (approx.) | (C)<br>$1,155,825<br>Allocated by % of Award<br>($1,155,825 × column (B)) |
|---|---|---|---|
| Jorge | $2,000,000 | .9324 | $1,077,692.31 |
| Maria | $ 100,000 | .0466 | $ 53,884.62 |
| Gina | $ 15,000 | .00699 | $8,082.69 |
| Jose | $ 15,000 | .00699 | $8,082.69 |
| Georgette | $ 15,000 | .00699 | $8,082.69 |
| | $2,145,000 | 100% | $1,155,825.00 |

The family contends that this method of applying the settlement credit would result in "gross inequities" in some cases. For example, the family correctly points out that some plaintiffs may recover more than the amount awarded by the jury, and some plaintiffs' awards will be reduced by settlement amounts paid to other plaintiffs. Although such results may seem harsh, they are mandated by the statutory language and are consistent with legislative intent.

■ The Legislature is presumed to intend the plain language of its legislative enactments, and we must give effect to the legislative intent. *See Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex. 1994). As to each claimant, the Legislature provided that defendants would receive a credit equal to "the sum of the dollar amounts of all settlements" paid to that claimant.[10] In addition, the Legislature defined claimant to include both the injured party and the party or parties seeking recovery of damages for injury to that person. Deducting the aggregate of all settlement amounts received by a claimant from the aggregate judgment awarded that claimant ensures that defendants will receive the full settlement credit provided by the statute.

Moreover, this method of allocation, which is not affected by the actual disbursement of the settlement money among the plaintiffs, is necessary to protect defendants from plaintiffs who "would manipulate settlements among those 'seek(ing) recovery of damages for injury to another person.'" *McIver,* 966 S.W.2d at 97. Because they generally have no control over how other defendants' settlements are

10. As noted by the First Court of Appeals in *McIver,* a claimant's recovery is reduced only by the amount of settlement money already received *by that claimant. McIver,* 966 S.W.2d at 96–97. In this case, the entire family is treated as one claimant; therefore, all of the settlement money must be deducted from the family's recovery. If, however, there were another claimant (for example, a second injured employee), that claimant's settlements would not be deducted from the Flores family's recovery, and similarly, the Flores family's settlement would not affect the other claimant's recovery.

structured, nonsettling defendants should not be penalized for the way in which the plaintiffs distribute the money among themselves. *Ellender,* 968 S.W.2d at 928 ("Nonsettling parties should not be penalized for events over which they have no control."); *see also Gem Homes,* 861 S.W.2d at 460 ("We find [that] ... allocation of settlement credit upon the percentage of damages found by the jury, rather than a percentage decided by the plaintiffs themselves for reasons of their own, is a more equitable method of assessing credit."). Using a method of allocation that is not dependent on the distribution of the settlement money chosen by the plaintiffs is the best method of ensuring that nonsettling defendants are not penalized.

\* \* \* \* \*

In sum, we conclude that the court of appeals erred in applying the settlement credit and we therefore modify the court of appeals' judgment. Because we also hold that the trial court did not abuse its discretion by excluding Acock's testimony for violating the Rule, we affirm the court of appeals' judgment, as reformed, and remand this cause to the trial court to render judgment in accordance with this opinion.

Justice OWEN, joined by Chief Justice PHILLIPS and Justice HECHT, dissenting.

Justice OWEN, joined by Chief Justice PHILLIPS and Justice HECHT, dissenting.

Because the record reflects that the trial court abused its discretion in excluding the testimony of Drilex's expert, I respectfully dissent. The expert's testimony was a key part of Drilex's case. The witness's technical violation of Rule 267 did not prejudice the plaintiffs in any way. Absent a showing of some harm to the plaintiffs, the trial court erred in excluding the expert's testimony. Moreover, if Drilex had timely requested the trial court to exempt its expert from the Rule, the trial court would

have had no discretion to deny that request under the facts of this case. The trial court's exclusion of the expert for conversations he had with Drilex's corporate representative when those conversations would have been permissible if the expert had been exempted is an abuse of discretion and was harmful error.

## I

Jorge Flores was severely injured while working on the floor of a drilling rig. He sued Drilex, among other defendants. Drilex had manufactured the piece of equipment with which Flores was working when he was injured. One of Drilex's principal contentions was that the accident was caused by improper procedures on the rig rather than by the design of its equipment. The only expert that Drilex retained to testify about proper operational procedures on a drilling rig was Randy Acock. The trial court prohibited Acock from testifying because he violated Rule 267.

## A

We have said that exclusion of a witness's testimony is "one of the harshest sanctions available." *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex. 1984). For a sanction to be just, it must not be excessive. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). "The punishment should fit the crime." *Id.* Exclusion of a witness who is critical to a party's case for a technical violation of Rule 267 is not punishment that fits the "crime" when the opposing party has not shown that it will be harmed.

The Court acknowledges that a trial court must "tak[e] into consideration all of the circumstances" before it decides whether to exclude a witness who has violated the Rule. 1 S.W.3d at 117; *see also* 6 WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1842 (Chadbourn rev.1976). Yet, the Court does not explain what circum-

stances justified exclusion of Acock when the Floreses did not claim or even suggest that they were harmed or prejudiced.

None of the decisions cited by the Court stands for the proposition that once there has been a violation of the Rule, the trial court can choose to exclude or not exclude the witness with unfettered discretion. *See* 1 S.W.3d at 120. This Court has held that, before a trial court refuses to allow testimony, it should "take into consideration all of the facts." *Southwestern Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 647–48 (Tex.1965). There are other authorities, which I find persuasive, that explain that a trial court abuses its discretion when it excludes a material witness for violating the Rule but no probable harm or prejudice to an opposing party was shown. As Judge Weinstein has observed in his treatise, "[m]ost courts hold that violating a proper exclusion order is not in itself sufficient to warrant excluding the testimony of the witness who violated the rule. These courts require at least a showing of probable prejudice resulting from the violation before authorizing exclusion of the witness's testimony." *See* 3 WEINSTEIN, WEINSTEIN'S EVIDENCE § 615.07[2][d] (2d ed.1999). Professors Wright and Gold similarly explain that prohibiting a witness from testifying because of a violation of the Rule is a "drastic" remedy that may be appropriate when "the prejudice associated with violation of the exclusion order cannot otherwise be mitigated by permitting attack on the witness' credibility." 29 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 6246 (1997). But when circumstances are "less compelling," exclusion of a witness may be an abuse of discretion. *Id.* In this case, there were no circumstances, compelling or otherwise, that justified ex-

clusion of Acock as a witness. I would hold that the trial court abused its discretion when it excluded Acock because the Floreses were not prejudiced or harmed and because no other purpose was served by excluding his testimony.

**B**

There is an additional basis for concluding that the trial court abused its discretion in excluding Acock. The Court correctly concludes that when a witness is exempted from the Rule, he or she is exempted for all purposes. *See* 1 S.W.3d at 119. Thus, as the Court explains, a witness who is exempted may remain in the courtroom to hear the testimony of other witnesses and may discuss the case with other nonexempt witnesses. Acock's two transgressions were that he listened for fifteen minutes to testimony from Drilex's corporate representative and that he discussed the case with that same witness, who was exempt from the Rule.[1] If Acock had also been exempted from the Rule, his conduct would have been unassailable.

When a party seeks to exempt its expert from the operation of Rule 267, the burden is minimal. *See Burrhus v. M & S Supply, Inc.,* 933 S.W.2d 635, 643 n. 7 (Tex. App.—San Antonio 1996, no writ) (citing Zager, *Invoking the Rule of Sequestration of Witnesses During Discovery in Civil Litigation,* 52 TEX. B.J. 662, 664 (1989)). The Court acknowledges as much in surveying the authorities that have considered this question. *See* 1 S.W.3d at 118 n. 4 (citing *Morvant v. Construction Aggregates Corp.,* 570 F.2d 626, 630 (6th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978)). As one court has

---

1. It is apparent from the record that the trial court ultimately decided to exclude Acock's testimony only because of his discussions with the corporate representative. Most of the hearing on the plaintiff's renewed motion to exclude Acock centered around the fact that he listened to testimony of one witness. At the conclusion of arguments by counsel on

this score, the trial court ruled, "Okay, I've heard enough. Against my better judgment I am going to allow him to testify." Subsequently, counsel for plaintiffs raised the question of whether Acock had discussed the case with Drilex's corporate representative. It was only then that the trial court ruled that Acock would be excluded as a witness.

observed, "[i]t has been generally held that expert witnesses are exempt from the operation of the Rule, or that a violation of the Rule by an expert witness will not justify excluding his testimony." *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.,* 509 S.W.2d 678, 685 (Tex.Civ.App.— Fort Worth 1974, writ ref'd n.r.e.) (citing *Lewis v. Owen,* 395 F.2d 537 (10th Cir. 1968)).

Drilex belatedly asked the trial court to exempt Acock from the Rule after the Floreses sought to exclude Acock's testimony. I agree with the Court that the trial court did not find or rule that Acock was exempt. But if Drilex had timely moved to exempt Acock, that motion should have been granted. It is therefore difficult to see how Acock's violations of the Rule could have harmed the Floreses. The Floreses offered no evidence nor did they argue that they were harmed in any way by the violations of the Rule. Acock's expert report had been furnished to them, and they had deposed him well in advance of trial. The testimony that Acock gave in his bill of review after he was excluded as a witness was consistent with his testimony and opinions before trial commenced. The only basis the Floreses urged for excluding Acock under the Rule was a technical violation. That does not suffice.

## II

The trial court's exclusion of Acock was harmful error. Although other defense witnesses offered their opinions on some of the topics about which Acock was prepared to testify, Acock was the only outside expert prepared to testify about how operations should be conducted on a drilling rig and how deficiencies in operations led to Jorge Flores's injuries. The other witnesses were Drilex employees or employees of other defendants. Testimony from those witnesses was also fragmented in the sense that one witness had an opinion on one topic, and another witness opined on another matter that Drilex intended to address in Acock's testimony. Of the nu-merous witnesses who testified, no witness offered a comprehensive explanation of proper drilling rig operations and of how Flores's injury was not due to Drilex's equipment. The exclusion of Drilex's only expert who was prepared to testify about one of its two distinct lines of defense was error.

## III

I agree with the Court's analysis regarding how settlement credits should have been applied under the Legislature's statutory scheme. But because Drilex is entitled to a new trial, I cannot join in the Court's judgment. I therefore dissent.